**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC. | Case No. 18-cv-06608 |
| Plaintiffs, | **Judge Thomas M. Durkin** |
| v. | **Magistrate Judge Sheila M. Finnegan** |
| ZHENG ZE, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT, A STATUTORY DAMAGES AWARD,
<u>AND A PERMANENT INJUNCTION</u>**

# TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................... 2

       A.     The Oakley Trademarks and Products .................................................... 2

       B.     Defendants' Unlawful Activities ............................................................ 3

       C.     Procedural History .................................................................................. 6

II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ....... 6

       A.     Summary Judgment Standard ................................................................. 6

       B.     Plaintiffs Are Entitled to Summary Judgment Against Defendants on Their
              Trademark Infringement and Counterfeiting, False Designation of Origin, and
              UDTPA Claims ....................................................................................... 7

              i.      *The Oakley Trademarks Are Federally Registered.* .................................. 7

              ii.     *Defendants Offered to Sell and Sold Unauthorized Products Bearing
                      Counterfeit Versions of the Oakley Trademarks.* ....................................... 8

              iii.    *Defendants' Use of the Counterfeit Oakley Trademarks Caused a
                      Likelihood of Confusion and Infringed as a Matter of Law.* ...................... 8

III.   PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST
       DEFENDANTS FOR TRADEMARK COUNTERFEITING .......................................... 10

       A.     Statutory Damages Are Appropriate in this Case ................................. 10

       B.     A Significant Damages Award Is Warranted ........................................ 12

              i.      *The Value of the Oakley Trademarks and Oakley's Anti-Counterfeiting
                      Efforts Justify a High Statutory Damages Award* .................................... 12

              ii.     *Defendants' Counterfeiting of the Oakley Trademarks Was Willful* ........ 13

              iii.    *Defendants' Wide Exposure over the Internet Merits a Substantial
                      Statutory Damages Award.* ....................................................................... 14

              iv.     *The Requested Statutory Damages Award Must Sufficiently Deter
                      Defendants and Similar Online Counterfeit Sellers.* ................................ 14

IV.    PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF ............... 15

V.     PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS .................... 16

VI.    CONCLUSION ................................................................................................... 16

ii

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................... 7

*AutoZone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008) ................................................................................. 9

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
    235 F.3d 1041 (7th Cir. 2000) ............................................................................... 7

*Bulgari, S.p.A. v. Zou Xiaohong, et al.*,
    2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) ................................ 1, 13, 16

*CAE, Inc. v. Clean Air Eng'g Inc.*,
    267 F.3d 660 (7th Cir. 2001) ............................................................................ 8, 10

*Chi-Boy Music v. Charlie Club*,
    930 F.2d 1224 (7th Cir. 1991) ............................................................................. 11

*Door Sys. v. Pro-Line Door Sys.*,
    83 F.3d 169 (7th Cir. 1996) ................................................................................... 8

*H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*,
    2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) ................................... 1, 15

*Lorillard Tobacco Co. v S&M Cent. Serv. Corp.*,
    2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ............................... 11, 12, 13

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
    2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ........................................ 12

*Luxottica USA LLC v. The Partnerships, et al.*,
    2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) .............................. 1, 13, 15, 16

*Luxottica USA LLC v. The Partnerships, et al.*,
    2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) ..................................... 1, 14

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) ........................................................................... 8

*Monster Energy Co. v. Meng Chun Jing*,
    2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ............................ 9, 13, 14, 16

*NBA Properties, Inc., et al. v. Yan Zhou, et al.*,
    2017 U.S. Dist. LEXIS 148971 (N.D. Ill. Sept. 14, 2017) ................................... 1, 9

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.*,
    2011 WL 1811446 (N.D. Ill. May 12, 2011) ................................................................ 7

*Packman v. Chi. Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ........................................................................................ 6

*River Light V, L.P., et al. v. Zhangyali, et al.*,
    2016 U.S. Dist. LEXIS 111301 (N.D. Ill. Aug. 22, 2016) ............................................ 1

*Sands, Taylor & Wood v. Quaker Oats Co.*,
    34 F.3d 1340 (7th Cir. 1994) ................................................................................ 12, 14

*Sara Lee v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) .................................................................... 11, 12

*Tobinick v. Scripps Clinic Med. Group*,
    81 Fed. Appx. 677 (9th Cir. 2003) ............................................................................. 11

## Statutes

15 U.S.C. § 1057(b) ............................................................................................................ 7

15 U.S.C. § 1065 ............................................................................................................. 2, 7

15 U.S.C. § 1114(1) ........................................................................................................ 7, 8

15 U.S.C. § 1115(b) ............................................................................................................ 7

15 U.S.C. § 1116(a) .......................................................................................................... 15

15 U.S.C. § 1117(a) .......................................................................................................... 16

15 U.S.C. § 1125(a) ............................................................................................................ 7

15 U.S.C. § 1127 ................................................................................................................. 8

15 U.S.C. §1125(c)(1) ...................................................................................................... 13

17 U.S.C. § 504(c) ............................................................................................................ 11

Fed. R. Civ. P. 56(a) ........................................................................................................... 6

## **MEMORANDUM**

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (together, "Plaintiffs") submit this Memorandum in Support of their Motion for Summary Judgment on all claims, a Statutory Damages Award, and a Permanent Injunction against Defendants mogautt and abuyone ("Defendants").[1]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs move for entry of summary judgment against Defendants for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count III). Further, Plaintiffs request a statutory damages award of at least $100,000 from each of the Defendants and mandatory attorney fees and costs.[2] *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.,* 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 for three alleged counterfeit sales); *NBA Properties, Inc., et al. v. Yan Zhou, et al.,* 2017 U.S. Dist. LEXIS 148971 (N.D. Ill. Sept. 14, 2017) (awarding $50,000 per counterfeit mark for alleged minimal sales without sales records); *Luxottica USA LLC v. The Partnerships, et al.,* 2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) (awarding $100,000 for alleged $62 in sales); *River Light V, L.P., et al. v. Zhangyali, et al.,* 2016 U.S. Dist. LEXIS 111301 (N.D. Ill. Aug. 22, 2016) (awarding $100,000 for alleged minimal sales); *Bulgari, S.p.A. v. Zou Xiaohong, et al.,* 2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) (awarding $100,000 for alleged minimal sales); *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) (awarding $150,000 for alleged $800 in revenue).

---

[1] This case remains pending against only Defendants mogautt and abuyone with all other claims involving other parties having been resolved by way of settlement or Default Judgment entered January 9, 2019 [63].

[2] Plaintiffs reserve the right to seek other relief sought in their Amended Complaint [11], including actual damages and an accounting of Defendants' profits, pending the outcome of this Motion.

## I.    BACKGROUND

### A.    The Oakley Trademarks and Products

Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear ("Oakley Products") and other goods.[3]  [PSF 3].  Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design.  [PSF 3].  The Oakley brand has come to symbolize high quality and Oakley Products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world.  [PSF 3].  Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.  [PSF 10].  The manufacturer's suggested retail price (MSRP) of genuine Oakley Products comparable to those sold by Defendants is $153.  [PSF 11].

Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products.  Oakley holds U.S. federal trademark registrations for its trademarks, including U.S.

Registration No. 3,151,994 for  (referred to herein as the "Oakley Trademarks") and U.S. Registration No. 1,984,501.  [PSF 12].  The registrations for the Oakley Trademarks are valid, subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065.  [PSF 13, 14].  The Oakley Trademarks have been used exclusively and continuously by Oakley, and have never been abandoned.  [PSF 15].

Oakley has extensively used and advertised the Oakley Trademarks, spending in excess of ten million dollars annually on brand advertising and promotions.  [PSF 16].  For example, in

---

[3] Oakley is an indirect, wholly owned subsidiary of Luxottica.  [PSF 2].

2015, Oakley launched the ONE OBSESSION campaign, which invites and inspires consumers to join Oakley's global network of renowned athlete ambassadors in living out their passions. [PSF 17]. This multi-channel brand campaign spans twenty-two (22) countries and includes digital, social, advertising, outdoor, retail activations, live events, and a digital experience on oakley.com/oneobsession. [PSF 17]. Over its nearly 40-year history, Oakley has used many athletic endorsers, including two-time Masters Champion Bubba Watson, Olympian Shaun White, and Michael Jordan. [PSF 18]. Oakley has also sponsored NASCAR driver Clint Bowyer, Formula 1 driver Fernando Alonso, and is the official eyewear supplier to the Olympic Team USA in an agreement running through 2020. [PSF 18, 19]. As part of this agreement, hundreds of athletes from more than fifteen (15) sports wore Oakley sunglasses at the 2012 London Olympic Games. [PSF 19]. Oakley also supplied product for both the 2014 Sochi Olympic Games and the 2016 Rio de Janerio Olympic Games. [PSF 19].

Oakley has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 20]. Oakley has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings. [PSF 20]. In recent years, Oakley has enforced against tens of thousands of websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate. [PSF 20].

### B. Defendants' Unlawful Activities

Defendants operate eBay stores at the URLs ebay.com/usr/mogautt and ebay.com/usr/abuyone ("Defendants' eBay Stores"). [PSF 4, 5]. Defendants advertised, offered for sale, and sold the products shown in Figures 1 and 2 below on Defendants' eBay Stores mogautt and abuyone (the "mogautt Product" and the "abuyone Product," respectively). [PSF 21, 26]. The

3

mogautt Product and the abuyone Product are collectively referred to herein as the "Counterfeit Oakley Products."



Figure 1 – mogautt Product eBay Store Listing

Figure 2 – abuyone Product eBay Store Listing

Defendants advertised, offered for sale, and sold their mogautt Product and the abuyone Product for approximately $2.95 and $3.19, respectively.  [PSF 23, 28].  In the product listings for the mogautt Product and the abuyone Product, Defendants used tactics to evade shut down while signaling to prospective buyers that their products featured Oakley's famous trademarks.  Namely,

4

as shown above in Figures 1 and 2, Defendants blurred the Oakley Trademarks on the sides of the mogautt and abuyone Products in their product listings. [PSF 22, 27].

Defendants accepted payment for their mogautt Product and abuyone Product via PayPal. [PSF 24, 29]. Defendants shipped their mogautt Product and abuyone Product to Illinois. [PSF 25, 30]. Images of the mogautt Product and the abuyone Product (as received) are shown below in Figures 3 and 4.



Figure 3 – mogautt Product as Received



Figure 4 – abuyone Product as Received

Plaintiffs examined images of the mogautt Product and abuyone Product. [PSF 33, 34]. Plaintiffs concluded that Defendants' mogautt Product and abuyone Product were not genuine

Oakley products. [PSF 36, 37]. Plaintiffs have not licensed or authorized Defendants to use any of the Oakley Trademarks, and Defendants are not authorized retailers of genuine Oakley products. [PSF 35].

### C.    Procedural History

Plaintiffs filed this action on September 27, 2018 against Defendants. [1]. This Court granted a Temporary Restraining Order ("TRO") [25] against Defendants on October 9, 2018, finding that Plaintiffs demonstrated, among other things, a likelihood of success on the merits of their claims. The TRO was extended on October 22, 2018 [31] and on November 6, 2018 [35]. The TRO was subsequently converted to a Preliminary Injunction [42] on November 20, 2018. [42]. Defendants filed their joint Answer to Plaintiffs' Amended Complaint on January 4, 2019. [51]. This Court denied Defendants' Motion to Unfreeze Assets or Modify the Preliminary Injunction on January 4, 2019, finding, *inter alia*, that "Plaintiffs established a high likelihood that all the defendants, including the Defendants here, willfully infringed the Oakley trademarks…" [52].

## II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A.    Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Plaintiffs Are Entitled to Summary Judgment Against Defendants on Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiffs' Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at \*5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc*., 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

### i. The Oakley Trademarks Are Federally Registered.

In this case, the Oakley Trademarks are distinctive and are registered with the United States Patent and Trademark Office. [PSF 12]. The registrations for the Oakley Trademarks are valid, subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065. [PSF 13, 14]. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the Oakley Trademarks are conclusive evidence of the validity of Oakley's registered trademarks and of the registration of the marks, of Oakley's ownership of the trademarks, and of Oakley's exclusive right to use the marks in commerce. 15 U.S.C. §§ 1115(b), 1057(b), 1065. Furthermore, Plaintiffs have not licensed or authorized Defendants to use any of the Oakley Trademarks, and neither of the Defendants are authorized retailers of genuine Oakley Products. [PSF 35]. Thus, Plaintiffs satisfy the first element of their claim.

      ii.     <u>Defendants Offered to Sell and Sold Unauthorized Products Bearing Counterfeit Versions of the Oakley Trademarks.</u>

Defendants advertised, offered for sale, and sold products bearing counterfeit Oakley Trademarks via the Defendants' eBay Stores. [PSF 21-30]. Defendants are not authorized retailers of genuine Oakley Products, and the products Defendants sold bearing the Oakley Trademarks are not genuine Oakley Products. [PSF 35].

      iii.    <u>Defendants' Use of the Counterfeit Oakley Trademarks Caused a Likelihood of Confusion and Infringed as a Matter of Law.</u>

Defendants' products clearly bear spurious marks which are identical with, or substantially indistinguishable from, the registered Oakley Trademarks, and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit"). Defendants used the Oakley Trademarks in connection with the advertising, offering for sale, and sale of unauthorized goods. 15 U.S.C. § 1114(1)(a) (prohibiting the use in advertising of any goods or services on or in connection with a protected mark).

In a trademark infringement case, likelihood of consumer confusion is ordinarily a question of fact. *CAE, Inc. v. Clean Air Eng'g Inc*., 267 F.3d 660, 677 (7th Cir. 2001) (citations omitted). However, "if the evidence is so one-sided that there can be no doubt about how the question should be answered," whether likelihood of confusion exists may be resolved on summary judgment. *Id*. (citing *Door Sys. v. Pro-Line Door Sys*., 83 F.3d 169, 173 (7th Cir. 1996)). The Seventh Circuit has held that where, as here, "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *see also NBA Props., Inc., et al. v. Yan Zhou, et al*., 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14, 2017) (internal citation omitted). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the Oakley Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Defendants' Counterfeit Oakley Products bear a mark identical to the Oakley Trademarks. [PSF 21-30]. Plaintiffs and Defendants sell products using the Oakley Trademarks to the same consumers, targeting those consumers searching for genuine Oakley Products. [PSF 10, 21, 26]. Thus, consumers searching for genuine Oakley Products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Oakley Products from Counterfeit Oakley Products. This is particularly true in this case where the Defendants' Counterfeit Oakley Products were offered for sale and sold on the Internet [PSF 21, 26] and consumers could not inspect the physical products. Further, Defendants were selling their products for $2.95 and $3.19, respectively. [PSF 23, 28]. Courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.'" *Monster Energy Co. v. Meng Chun Jing*, 2015 U.S. Dist. LEXIS 86956, at *7-8 (N.D. Ill. July 6, 2015).

Plaintiffs do not need to prove actual consumer confusion; rather Plaintiffs only need to show a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Oakley Products. *CAE, Inc. v. Clean Air*

9

*Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). In addition to point-of-sale confusion about the source of products sold on the Defendants' eBay Stores, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *Id.* at 683. Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label used by others, and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id.* That association also constitutes infringement of the Oakley Trademarks. *Id.*

Accordingly, Defendants are liable for trademark counterfeiting as a matter of law.[4]

## III. PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANTS FOR TRADEMARK COUNTERFEITING

Plaintiffs seek to recover an award of statutory damages of $100,000 per Defendant as authorized by 15 U.S.C. § 1117(c) for Defendants' advertising, offering for sale, and sale of Counterfeit Oakley Products. This amount is reasonable in light of prior awards in the range of $100,000 to $1,000,000 with similar relevant factors, including: (1) Defendants' willful infringement; (2) efforts taken by Plaintiffs to promote, protect and enhance the Oakley Trademarks; (3) wide exposure over the Internet; (4) deterrence of the Defendants; and (5) deterrence of similarly situated online counterfeit sellers.

### A. Statutory Damages Are Appropriate in this Case

15 U.S.C. § 1117(c) provides that a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2)

---

[4] This also constitutes trademark infringement of U.S. Registration No. 1,984,501 under the same likelihood of confusion analysis.

provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co. v S&M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563, at *10 (N.D. Ill. Nov. 5, 2004); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347-48 (7th Cir. 1994). Because damages inquiries under Section 1117(c) consider

both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *18.

     **B.**     **A Significant Damages Award Is Warranted**

          i.     <u>The Value of the Oakley Trademarks and Oakley's Anti-Counterfeiting Efforts Justify a High Statutory Damages Award</u>

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Oakley] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Oakley has extensively used and advertised the Oakley Trademarks, spending in excess of ten million dollars annually on brand advertising and promotions. [PSF 16-19]. As a result, products bearing the Oakley Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Because of these

12

and other factors, the Oakley Trademarks are famous marks as that term is used in 15 U.S.C. §1125(c)(1).

As part of its worldwide anti-counterfeiting program, Oakley has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 20]. In recent years, Oakley has enforced against tens of thousands of websites and marketplace listings on platforms such as eBay, AliExpress, Alibaba, Amazon, and Wish.com. [PSF 20]. Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the value of the Oakley brand and the extensive steps being taken to protect, promote and enhance it. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

ii.     Defendants' Counterfeiting of the Oakley Trademarks Was Willful

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19–20. Knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at *20.

The Court can infer from Defendants' conduct that they had knowledge that their conduct constituted infringement. First, Defendants' use of the Oakley Trademarks had to be willful, since products bearing the Oakley Trademarks are widely recognized and associated exclusively with Oakley, and the marks Defendants used are identical to the Oakley Trademarks. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *10; *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *6 (N.D. Ill. Oct. 15, 2015). Furthermore, Defendants blurred the Oakley Trademarks in the online listing in an effort to evade shut down while signaling to a prospective buyer that their products featured Oakley's famous trademark. [PSF 22, 27]. As such,

13

Defendants' counterfeiting of the Oakley Trademarks had to be willful, or at a minimum, shows a reckless disregard for Plaintiffs' trademark rights.

### iii. Defendants' Wide Exposure over the Internet Merits a Substantial Statutory Damages Award.

Defendants' ability to reach a vast customer base by willfully advertising, offering for sale, and selling Counterfeit Oakley Products over the Internet on the eBay marketplace platform merits a substantial statutory damages award. Defendants can reach a large base of active buyers through the eBay platform. As of December 31, 2017, the eBay marketplace had more than 170 million active buyers. [PSF 38]. Courts in this District have recognized the ability for online marketplace sellers to reach a vast customer base and factored this wide market exposure into the statutory damages calculation. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

### iv. The Requested Statutory Damages Award Must Sufficiently Deter Defendants and Similar Online Counterfeit Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28

14

(E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites, like the eBay platform used by the Defendants. [PSF 21, 26]. In the 2017 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $1.2 billion. [PSF 39]. China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 78 percent of all seizures. [PSF 40]. In addition, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for an estimated $850 billion in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue, of more than $125 billion every year. [PSF 41]. BASCAP additionally expects these figures to increase each year. [PSF 42].

Considering the above factors, including the strength of the Oakley Trademarks, Plaintiffs' substantial anticounterfeiting efforts, Defendants' willful infringement, that Defendants have the ability to reach a vast audience through their Internet stores, and the need for deterrence of both Defendants and other sellers, Plaintiffs respectfully request the Court's entry of an award of $100,000 per Defendant.

## IV. PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiffs respectfully request the entry of a permanent injunction enjoining Defendants from advertising, offering for sale, and/or selling Counterfeit Oakley Products or otherwise violating Oakley's rights in the Oakley Trademarks. 15 U.S.C. § 1116(a); *See also H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* 2017 U.S. Dist. LEXIS

207613, *14-15 (N.D. Ill. Dec. 18, 2017) (granting plaintiff's request for a permanent injunction barring defendant from advertising, offering for sale, and selling counterfeit products).

## V.     PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods.  15 U.S.C. § 1117(b).  *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A.,* 2015 U.S. Dist. LEXIS 140606, at *9-10.  Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances.  *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, at *31-33 (N.D. Ill. July 11, 2005).  Plaintiffs respectfully request entry of an award of their reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b) because Defendants knowingly and willfully advertised, offered for sale, and sold Counterfeit Oakley Products.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order granting summary judgment against Defendants for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).  Plaintiffs request that this Court award Plaintiffs statutory damages of at least one hundred thousand dollars ($100,000) from each of the Defendants, enter a permanent injunction prohibiting Defendants from advertising, offering for sale, and/or selling products using the Oakley trademarks, and award Plaintiffs reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 7th day of February 2019.     Respectfully submitted,


                                        /s/ Justin R. Gaudio
                                        Amy C. Ziegler
                                        Justin R. Gaudio
                                        RiKaleigh C. Johnson
                                        Greer, Burns & Crain, Ltd.
                                        300 South Wacker Drive, Suite 2500
                                        Chicago, Illinois 60606
                                        312.360.0080 / 312.360.9315 (facsimile)
                                        aziegler@gbc.law
                                        jgaudio@gbc.law
                                        rjohnson@gbc.law

                                        *Counsel for Plaintiffs*
                                        *Luxottica Group S.p.A. and Oakley, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiffs*
*Luxottica Group S.p.A. and Oakley, Inc.*

18